IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CLEAN & CLEAR ADVANTAGE LLC,**

    **Plaintiff,**

v.

**WEST VIRGINIA DEPARTMENT OF HEALTH; SHERRI YOUNG, D.O.,** in her individual capacity and her official capacity as Cabinet Secretary for the West Virginia Department of Health; **WEST VIRGINIA OFFICE OF HEALTH FACILITY LICENSURE & CERTIFICATION;** and **CHRISTOPHER G. NELSON,** in his individual capacity and his official capacity as Interim Director of the West Virginia Office of Health Facility Licensure & Certification,

    **Defendants.**

Civil Action No. 2:25-cv-00228

Judge _____

## COMPLAINT

Clean & Clear Advantage LLC states and alleges the following for its complaint against Defendants.

## INTRODUCTION

1. Clean & Clear Advantage LLC ("Clean & Clear") operates an addiction treatment facility in Parkersburg, West Virginia.

2. Clean & Clear's services are sadly in high demand in West Virginia because of the addiction epidemic that has plagued the State for some time.

3. To meet that demand, Clean & Clear acquired plans and drawings to increase the capacity of its facility from 75 to 300 treatment beds.

4. In February 2022, Clean & Clear received Defendants' approval to begin construction.

5. Clean & Clear spent substantial sums on construction activity.

6. But before Clean & Clear could complete construction and file for an amended license to add additional treatment beds, the Legislature passed a new law, W. Va. Code § 16-2D-9(5) (eff. Mar. 8, 2023), capping the total number of addiction treatment beds in a given county at 250.

7. Defendants rejected Clean & Clear's attempt to amend its license, and in support, cited solely the recently passed Section 16-2D-9(5).

8. Section 16-2D-9(5) changed the previous law, and provided that any addiction treatment facility in a county with 250 beds in a county must obtain a certificate of need, but that no certificate shall be issued to a facility providing such services.

9. In other words, the Legislature has decreed that the State will deny health care to individuals with a certified need for care solely because they suffer from addiction.

10. Addiction is a qualifying disability protected from discrimination under federal law.

11. Section 16-2D-9(5) facially violates the Equal Protection Clause of the Fourteenth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act.

12. Moreover, on information and belief, Section 16-2D-9(5) was passed and applied to specifically prevent Clean & Clear from pursuing its construction and expansion, which along with the additional conduct of behalf of Defendant detailed herein, violates 42 U.S.C. § 1983.

13. Through this complaint, Clean & Clear seeks declaratory and injunctive relief invalidating Section 16-2D-9(5), and enjoining its enforcement against it.

14. Clean & Clear also seeks money damages it has suffered because of Defendants' discriminatory and unlawful conduct.

## PARTIES

15. Clean & Clear is a West Virginia limited liability company with its principal office in Parkersburg, West Virginia.

16. The West Virginia Department of Health ("DOH") is a newly created state agency as part of the Legislature's decision to split the former Department of Health & Human Resources into three separate agencies. *See* W. Va. Code § 5F-2-1a(c)(1).

17. At all relevant times, Dr. Sherri Young was the Cabinet Secretary of DOH (the "Secretary") and is named in her individual and official capacities.

18. The West Virginia Office of Health Facility Licensure & Certification ("OHFLAC") is a sub-agency or board of the DOH. *See* W. Va. Code § 5F-2-1a(c)(1)(F)(i).

19. At all relevant times, Christopher G. Nelson was the Interim Director of OHFLAC (the "Director") and is named in his individual and official capacities.

## JURISDICTION AND VENUE

20. This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because the claims arise under the Constitution and statutes of the United States.

21. Venue in this court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this District, and because a substantial part of the events or omissions giving rise to this claim occurred in this District.

22. Clean & Clear has complied with the pre-suit notification provisions set forth in West Virginia Code § 55-17-3(a).

23. To the extent that the State of West Virginia is responsible for any monetary judgment in this matter, recovery is sought up to the liability limits of any applicable insurance policy.

# FACTS

### Regulatory framework for increasing bed capacity at addiction treatment centers

24. In West Virginia, addiction treatment facilities are characterized as "behavioral health centers" providing "behavioral health services" subject to regulation under W. Va. C.S.R. § 64-11-1 *et seq.*

25. DOH and the Secretary have ultimate licensing and enforcement authority over behavioral health centers in West Virginia. *See* W. Va. Code § 27-9-1; *see also* W. Va. C.S.R. § 64-11-2.4.

26. OHFLAC and the Director also have licensing and enforcement authority over behavioral health centers in West Virginia, as designated by DOH and the Secretary. *See* W. Va. C.S.R. § 64-11-2.4.

27. Of relevance here, a provider must obtain an amended license to increase the bed capacity of an addiction treatment center. *See* W. Va. C.S.R. § 64-11-4.2.3.

28. However, before beginning construction to increase bed capacity, a provider must first submit construction drawings and specifications to Defendants for approval to proceed. *See* W. Va. C.S.R. § 64-11-4.5.

29. Importantly, this preliminary approval is separate from the licensure amendment application.

30. Only after such construction is complete can the provider apply for and receive an amended license to increase bed capacity. *See* W. Va. C.S.R. § 64-11-4.1.5, -4.1.6.

31. Thus, to increase bed capacity of an addiction treatment center, a provider must first obtain Defendants' approval to proceed with construction. The provider cannot begin construction without Defendants' preliminary affirmative approval. Then, after completing construction, a provider submits an amended license application to Defendants. Finally, Defendants inspect the

facility for compliance with applicable regulations and, assuming the facility passes muster, issues the amended license to operate.

32. The foregoing procedure — construction only after preliminary approval, and licensure amendment application only after construction is complete — is how Defendants administer the behavioral health center licensure amendment process.

### Addiction treatment centers and certificate of need exemption

33. West Virginia has tragically suffered an addiction epidemic for many years.

34. Recognizing the tremendous need for treatment, the Legislature in 2016 exempted behavioral health centers — i.e. addiction treatment providers — from the State's certificate of need process. *See* W. Va. Code § 16-2D-11(21) (eff. June 10, 2016).

35. The certificate of need process can significantly delay the creation and provision of health care services because it requires regulatory approval before such services may be provided in the State.

36. However, in 2023, the Legislature reversed course and, using the certificate of need process, placed substantial numeric and geographic restrictions on addiction treatment providers.

37. Specifically, the first 250 addiction treatment beds in a county remain exempt from the certificate of need process because "the Legislature finds that a need exists." W. Va. Code § 16-2D-11(b)(19).

38. But once a county reaches 250 addiction treatment beds, a certificate of need is required to add more beds, but the Legislature has decreed that no certificate will be issued. *See* W. Va. Code § 16-2D-9(5) (eff. Mar. 8, 2023).

39. Specifically, Section 16-2D-9(5) provides that "[n]otwithstanding [that the Legislature finds that a need exists for addiction treatment], these health services require a certificate of need but the authority may not issue a certificate of need to: . . . Add licensed substance abuse

treatment beds in any county which already has greater than 250 licensed substance abuse treatment beds." *Id*.

### Clean & Clear makes substantial investment upon Defendants' approval, but Defendants ultimately deny the amended license application under new certificate of need law

40. Clean & Clear is a provider of addiction treatment services.

41. Clean & Clear operates an addiction treatment center in Parkersburg, West Virginia.

42. In February 2022, Clean & Clear received Defendants' approval to engage in a significant construction project to expand the capacity of its facility from 75 to 300 total beds to meet the demand for its critical services.

43. Relying on Defendants' approval, Clean & Clear has spent substantial sums of time, money, and resources to build out its facility to accommodate 300 beds in compliance with applicable law and pursuant to Defendants' authorization.

44. However, in the interim, the Legislature amended state law to cap the number of addiction treatment beds per county, as described above.

45. In fact, on information and belief, the Legislature enacted that statute specifically to stop Clean & Clear from expanding. For example, and without limitation:

- Local political figures, including without limitation members of the Parkersburg City Council, expressed their opposition to Clean & Clear's expansion;

- The lead sponsor of House Bill 3337 (the bill which was eventually passed that imposed the aforementioned bed restrictions) was West Virginia House of Delegates member Scot Heckert of Wood County, WV. Each of the remaining four Delegates representing Wood County (Bill Anderson; Bob Ferenbacher; Vernon Criss, and Dave Foggin) were co-sponsors of the HB 3337;

- The original version of HB 3337 included the following language: "The purpose of this bill is to prohibit additional drug and alcohol treatment facilities and service in *a certain county*." *Id*. (emphasis added); and,

- Clean & Clear is the largest facility of its kind located in Wood County, WV, and on information and belief, the only such facility engaging in expansion in Wood County, WV, at the relevant time.

46. Almost immediately after the statutory cap went into effect, Clean & Clear contacted Defendants for clarification of whether the cap would apply to it, notwithstanding Defendants' express approval to proceed with construction and expand to 300 beds.

47. Defendants refused to provide Clean & Clear with an answer.

48. On August 11, 2023, Clean & Clear applied for an amended license to operate additional beds.

49. On October 12, 2023, Clean & Clear received Defendants' denial of that application by letter dated August 28, 2023.

50. The only reason Defendants gave for denying Clean & Clear's application was the aforementioned new cap on substance abuse treatment beds.

51. Clean & Clear pursued Defendants' administrative appeal process to its completion, and an administrative law judge ultimately affirmed Defendants' denial of licensure amendment.

**Clean & Clear has standing to bring these claims**

52. To the extent necessary, Clean & Clear has exhausted its administrative remedies to receive an amended license from Defendants.

53. Clean & Clear has standing to seek redress for its own injuries, and third-party standing based on the injuries to the individuals it serves. *See, Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214–15 (4th Cir. 2020) (discussing third-party standing).

## CAUSES OF ACTION

### COUNT I — VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

54. Clean & Clear incorporates the foregoing paragraphs herein.

55. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

56. To state an Equal Protection claim, a plaintiff must allege (1) "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" and (2) "that the disparity was not justified under the appropriate level of scrutiny." *Fauconier v. Clark*, 966 F.3d 265, 277 (4th Cir. 2020).

57. "Classifications involving individuals with disabilities are subject only to rational basis scrutiny." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1267 (4th Cir. 1995).

58. Section 16-2D-9(5) facially and intentionally discriminates against individuals suffering from addiction in a manner that cannot be justified on any rational basis.

59. Defendants discriminated against Clean & Clear and the individuals it serves when it applied Section 16-2D-9(5) to deny Clean & Clear's expansion of services.

60. As a direct and proximate result of the foregoing violations of the Equal Protection Clause, Clean & Clear has suffered damages including, but not limited to, lost profits, lost business opportunity, aggravation and inconvenience, and attorneys' fees and costs.

## COUNT II — VIOLATION OF THE REHABILITATION ACT

61. Clean & Clear incorporates the foregoing paragraphs herein.

62. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

63. Section 16-2D-9(5) facially and intentionally targets Clean & Clear and and the individuals it serves solely by reason of the individuals' disability to exclude them from participation in, deny them the benefits of, and subject them to discrimination under programs or activities receiving federal funds.

64. Defendants discriminated against Clean & Clear and the individuals it serves solely by reason of the individuals' disability when it applied Section 16-2D-9(5) to deny Clean & Clear's expansion of services.

65. As a direct and proximate result of the foregoing violations of the Rehabilitation Act, Clean & Clear has suffered damages including, but not limited to, lost profits, lost business opportunity, aggravation and inconvenience, and attorneys' fees and costs.

## COUNT III — VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

66. Clean & Clear incorporates the foregoing paragraphs herein.

67. The Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

68. Section 16-2D-9(5) facially and intentionally discriminates against individuals suffering from addiction.

69. Defendants discriminated against Clean & Clear and the individuals it serves when it applied Section 16-2D-9(5) to deny Clean & Clear's expansion of services.

70. As a direct and proximate result of the foregoing violations of the Americans with Disabilities Act, Clean & Clear has suffered damages including, but not limited to, lost profits, lost business opportunity, aggravation and inconvenience, and attorneys' fees and costs.

## COUNT IV — VIOLATION OF 42 U.S.C. § 1983

71. Clean & Clear incorporates the foregoing paragraphs herein.

72. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

73. Moreover, as described above and on information and belief, Section 16-2D-9(5) was enacted and applied specifically to stop Clean & Clear's construction and expansion of its facility.

74. The foregoing constitutional and statutory violations by Defendants violate 42 U.S.C § 1983.

75. As a direct and proximate result of the foregoing violations, Clean & Clear has suffered damages including, but not limited to, lost profits, lost business opportunity, aggravation and inconvenience, and attorneys' fees and costs.

## DECLARATORY AND INJUNCTIVE RELIEF

76. Clean & Clear incorporates the foregoing paragraphs herein.

77. Clean & Clear is entitled to a declaration as follows:

    a.    That West Virginia Code § 16-2D-9(5) facially violates the Equal Protection Clause of the Fourteenth Amendment;

    b.    That West Virginia Code § 16-2D-9(5) facially violates the Rehabilitation Act;

    c.    That West Virginia Code § 16-2D-9(5) facially violates the Americans with Disabilities Act;

    d.    That Defendants violated the Equal Protection Clause of the Fourteenth Amendment when they applied West Virginia Code § 16-2D-9(5) to deny Clean & Clear's amended permit;

    e.    That Defendants violated the Rehabilitation Act when they applied West Virginia Code § 16-2D-9(5) to deny Clean & Clear's amended permit; and

    f.    That Defendants violated the Americans with Disabilities Act when they applied West Virginia Code § 16-2D-9(5) to deny Clean & Clear's amended permit; and,

    g.    That the Defendants' conduct violates 42 U.S.C § 1983.

78. Clean & Clear is entitled to an order enjoining the enforcement or application of West Virginia Code § 16-2D-9(5) against it.

79. Clean & Clear is also entitled to an order enjoining and/or requiring Defendants to consider an amended license application submitted by it for the expanded capacity and operations under the construction plans approved by Defendants.

## *PULLMAN* ABSTENTION AND *ENGLAND* RESERVATION OF CLAIMS

80. Clean & Clear incorporates the foregoing paragraphs herein.

81. Clean & Clear has filed a complaint in West Virginia State Circuit Court seeking declaratory and injunctive relief. See, *Clean & Clear Advantage LLC v. West Virginia Department*

*of Health and West Virginia Office of Health Facility Licensure & Certification*, Civil Action No. CC-20-2025-C-457 (Circuit Court of Kanawha County, West Virginia) (copy of state court complaint attached hereto).

    82.    In support of its state court complaint, Clear & Clear asserts, in part, as follows:

- The bed restriction passed by the West Virginia Legislature does not apply to Clean & Clear, as it applied for an amended license rather than a certificate of need (*see, id.* ¶¶ 55-59);

- The certificate of need restriction does not apply to Clean & Clear because it was provided an exemption pursuant to West Virginia Code §16-2D-11(*see, id.* ¶¶ 60-62);

- W. Va. Code §16-2D-9 cannot be retroactively applied to Clean & Clear, because the Legislature did not indicate that the statute was to be applied retroactively (*see, id.* ¶¶ 63-67);

- W. Va. Code §16-2D-9 is unconstitutionally vague and unenforceable, as (for example) the code section does not include a definition of "substance abuse treatment" (*see, id.* ¶¶ 68-71); and,

- Clean & Clear has a vested right to continue with the bed expansion at its facility (*see, id.* ¶¶ 72-80).

    83.    Accordingly, Clean & Clear will seek a stay of the current action pursuant to the *Pullman* abstention doctrine, because its state law claims (including without limitation its vested rights claim) is perhaps an unclear area of state law, and because this federal action raises constitutional issues that might be avoided by a favorable judgment in state court. *See, Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941).

    84.    In support, Clean & Clear further invokes what is referred to as the *England* procedure, in that it reserves the foregoing claims to this Court and further reserves the right to return to

this Court should it not prevail in state court. *See, England v. Medical Examiners*, 375 U.S. 411 (1964); *see also*, *Nivens v. Gilchrist*, 444 F.3d 237, 245–46 (4th Cir. 2006).

WHEREFORE, Clean & Clear respectfully requests the following relief against the Defendants:

    a.    Declaratory relief as stated herein;

    b.    Injunctive relief as stated herein;

    c.    Consequential damages;

    d.    Lost profits and lost business opportunity;

    e.    Aggravation and inconvenience;

    f.    Attorney fees and costs; and

    g.    Any other relief to which Clean & Clear may seek or be entitled to under law or equity.

**CLEAN & CLEAR SEEKS A JUDICIAL DETERMINATION FROM THIS COURT AS TO ITS REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF, AND A JURY TRIAL AS TO THE AMOUNT OF MONETARY DAMAGES TO WHICH IT IS ENTITLED**

**CLEAN & CLEAR ADVANTAGE LLC,**

By counsel,

*/s/ Sean W. Cook*

Sean W. Cook (WV State Bar #10432)
309 Dolaron Lane
South Charleston, WV 25309
681.313.9809
sean@seanwcooklaw.com